NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL L. LANGE, | : |
| | : Civil Action No. 04-5980 (SRC) |
| Plaintiff, | : |
| | : **OPINION** |
| v. | : |
| | : |
| METROPOLITAN LIFE INSURANCE | : |
| COMPANY, AT&T CORP., & LUCENT | : |
| TECHNOLOGIES, INC., | : |
| | : |
| Defendants. | : |

**CHESLER**, District Judge

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants Metropolitan Life Insurance Company ("MetLife"), AT&T Corporation ("AT&T"), ("Defendants") and Lucent Technologies, Inc.[1] [docket item # 10]. This Court has considered the submissions by the parties in connection with the motion, and pursuant to Federal Rule of Civil Procedure 78, adjudicates the motion based on the papers submitted. For the reasons discussed below, this Court grants Defendants' motion for summary judgment in its entirety.

---

[1] In her Statement of Undisputed Material Facts filed in response to this Motion, Plaintiff concedes that "Summary Judgment is appropriate for Defendant Lucent." This Court therefore only addresses Defendants MetLife and AT&T in its discussion within this opinion. ( Pl.'s Statement of Undisputed Material Facts ¶ 19.)

**I.     BACKGROUND**

Robert Lange ("Decedent") died on December 15, 2001. (Aff. of Beth Eksterowicz in supp. of Defs.' Mot. for Summ. J. Ex. 1 [hereinafter "Eksterowicz Aff."].) The underlying action arises out of Plaintiff Carol L. Lange ("Plaintiff"), Decedent's wife, requesting information on death benefits from her husband's former employer on approximately March 26, 2002 and being told that Decedent never converted his group life insurance policy to an individual policy, so no benefits were available. (Def.'s Statement of Undisputed Material Facts ¶ 19 [hereinafter "Defs.' Facts"]; Pl's Statement of Undisputed Material Facts ¶ 1 [hereinafter "Pl.'s Facts"].)

Decedent began working for AT&T in June 1979. (Defs.' Facts ¶ 4; Pl.'s Facts ¶ 1.) While working for AT&T, Decedent received group benefits, including basic life insurance coverage valued at one time his annual pay, and he elected supplemental life insurance of five times his total annual pay, valuing his total life insurance benefit at $270,000. (Defs.' Facts ¶ 4; Pl.'s Facts ¶¶ 1, 9.) Defendant MetLife funded AT&T's plan and determined benefit eligibility. (Pl.'s Opp. to Defs.' Mot. for Summ. J. 16; Defs.' Facts ¶¶ 1, 18.) In October 1991, Decedent was informed that his position had become obsolete, and then, in April 1992, he received notice that his employment would be terminated on June 1, 1992 unless he was assigned to another position. (Defs.' Facts ¶¶ 5-6; Pl.'s Facts ¶ 1.) Decedent was not assigned to another position by that date but instead filed for benefits under the AT&T Sickness and Accident Disability Benefits Plan ("SADBP"). (Defs.' Facts ¶ 7; Pl.'s Facts ¶ 1.) Pursuant to the plan, Decedent received sickness disability benefits for the SADBP's maximum of 52 weeks. (Defs.' Facts ¶ 8; Pl.'s Facts ¶ 1.) At the conclusion of those 52 weeks in June 1993, Decedent filed for long term disability benefits. (Pl.'s Facts ¶¶ 3, 5.)

The parties dispute which Summary Plan Description ("SPD") applies to this case. Defendants state that AT&T's 1992 Summary Plan Description for Management Employees ("1992 SPD") applies to this matter and later amendments did not change the applicable provisions (Defs.' Facts ¶ 1), but Plaintiff asserts that three SPDs are applicable: the 1992 SPD, a 1996 SPD, and a 1996 Supplemental Life Insurance Plan issued in 1997 with an effective date of January 1, 1996 (Pl.'s Facts ¶ 2).

After failing to obtain relief through a Consumer Complaint filed with the New Jersey Division of Banking and Insurance (Defs.'s Facts ¶¶ 20-22; Pl.'s Facts ¶ 1), Plaintiff filed a three-count complaint with this Court on December 17, 2004 [docket item # 1].  In the first count, Plaintiff alleges that Defendants' SPD violated ERISA because it "failed to contain a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide" (Compl. ¶ 35), specifically, that Decedent's failure to convert to an individual plan within a specified time period after ceasing employment with AT&T would result in termination of his coverage (Compl. ¶ 37).  Plaintiff asserts that Defendants gave Decedent incorrect and incomplete information, and in doing so, "breached their duties as administrators, fiduciaries, and/or trustees[,]" causing Plaintiff to "sustain irreparable harm" as the sole beneficiary of the life insurance policy and Decedent's estate. (Compl. ¶¶ 40-43.)   In the second count, Plaintiff claims that Defendants engaged in material misrepresentations by withholding information about the need to convert a group life insurance policy to an individual policy and how to go about the conversion, and Decedent did not know and should not have known how to convert the policy.  (Compl. ¶¶ 45-48.)  Plaintiff further

asserts that Decedent detrimentally relied on Defendants' material misrepresentations, so Defendants should be equitably estopped from refusing to pay life insurance benefits on Decedent's policy. (Compl. ¶¶ 49-51.) In the third count of the complaint, Plaintiff alleges that N.J.S.A. 17B:27-24 and N.J.S.A. 11:4-42.13 impart on Defendant MetLife "the duty and obligation to furnish a notice to the insured under a group life insurance plan of his rights to convert to an individual policy" (Compl. ¶ 53.) and that Defendant MetLife "breached its duty and was negligent in failing to provide" notice of cancellation, need for conversion, or Decedent's employment termination (Compl. ¶¶ 54-56.). As a result of these allegations, Plaintiff seeks to reinstate Decedent's group life insurance policy and to convert it to an individual plan, to require payment of life insurance proceeds of that individual plan to Plaintiff, to obtain monetary damages on Counts Two and Three, to secure all other relief that the Court deems appropriate, and to receive attorney's fees, costs, and interest. (Compl. ¶¶ 7-10.)

  Defendants filed this motion for summary judgment on September 10, 2007 [docket item #10], asserting that MetLife's denial of life insurance benefits to Plaintiff was not arbitrary or capricious, a beneficiary seeking benefits under a plan does not have a cause of action for breach of fiduciary duty, Plaintiff fails to "assert a viable cause of action based upon equitable estoppel[,]" material misrepresentation causes of action are preempted by ERISA, no cause of action exists under New Jersey law as New Jersey law is preempted by ERISA, and Defendant Lucent Technologies should be granted summary judgment as its plan was not in effect at the time [Decedent's] benefits terminated." (Defs.' Br. in Supp. of Mot. for Summ. J. at 8-26.) Plaintiff filed timely opposition [docket item # 12]. She asserts that as a beneficiary, she has a cause of action for breach of fiduciary duty under ERISA, that ERISA does not preempt her

statutory claim under N.J.S.A. 17B:27-24, and that MetLife's denial of coverage was improper and does not survive a heightened form of the arbitrary and capricious standard of review, which Plaintiff asserts applies where an insurance company "both funds and administers benefits[.]" (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 6-18.)

## II. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48. Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go

beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("[t]o raise a genuine issue of material fact, . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant[,]" but rather must "exceed[] the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

    **B.**    **Discussion**

        1.    Applicability of N.J. State Law to Count III of Plaintiff's Complaint

Plaintiff asserts that "Defendant Met Life breached its duty to provide notice pursuant to N.J.S.A. 17B:27-24." (Pl. Br. in Opp'n to Defs.' Mot. for Summ. J. at 13-15.)  In contrast, Defendants argue that no cause of action exists under New Jersey law, because the state law provision relied upon by Plaintiff is preempted by ERISA since the plan at issue is an "ERISA governed employee welfare benefit plan."  (Defs.' Reply Br. in Supp. of Mot. for Summ. J. at 10, 10-12; Defs.' Br. in Supp. of Mot. for Summ. J. at 23-26.)

This Court does not need to address whether N.J.S.A. 17B:27-24 is preempted by ERISA, because, even if the state statute was not preempted, the extension of time given by the statute for the opportunity of an individual with a group policy to convert to an individual policy lapsed long before Decedent's death.  N.J.S.A. 17B:27-24 was in effect at the time Plaintiff was denied benefits under Decedent's life insurance policy.[2]  That statute read:

> If any individual insured under a group life insurance policy

---

[2] N.J.S.A. 17B:27-24 has subsequently been repealed and replaced with a substantively identical provision, N.J.S.A. 17B:27-73.  N.J.S.A. 17B:27-24 (2004);  N.J.S.A. 17B:27-73; 2005 N.J. Laws c. 190, § 6.

> hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to the making of application and payment of the first premium within the period specified in such policy, and <u>if such individual is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then the individual shall have an additional period within which to exercise such right; but nothing herein shall be construed to continue any insurance under the policy beyond the period provided in the policy. Such additional period shall expire 15 days next after the individual is given such notice, but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy</u>. Written notice presented to the individual, or mailed by the policyholder to the last known address of the individual, or mailed by the insurer to the last known address of the individual as furnished by the policyholder, shall constitute notice for the purposes hereof.
>
> N.J.S.A. 17B:27-24 (emphasis added).

Therefore, by the terms of the statute, if an insured person is not given notice of the right to convert a group policy to an individual policy upon the termination of employment, that insured person is afforded an additional period of fifteen days after notice is given to convert to an individual policy. <u>Id.</u> However, of import, the statute explicitly states that the period of extension for eligibility to convert to a group policy cannot extend more than 60 days past the group policy's expiration date. <u>Id.</u>; <u>Estate of Hagel v. Bd. of Trs., Pub. Employees' Ret. Sys.</u>, 226 N.J. Super. 182, 191-92 (App. Div. 1988) (citing <u>Wells v. Wilbur B. Driver Co.</u>, 121 N.J. Super. 185, 196 (Law Div.1972) ("wherein then Judge Handler determined that there must be notice at the time of termination or else there will be the additional 60 days of coverage provided by the statute[,]" <u>Estate of Hagel</u>, 226 N.J. Super. at 191-92. )).

In this case, Plaintiff does not dispute that, pursuant to the 1992 SPD, Decedent's group life insurance benefits continued for three years at no cost to him after he became totally

disabled. (Defs.' Facts at ¶ 11, 28; Pl.'s Facts ¶ 1.) Decedent's employment was terminated on June 1, 1992, at which point he filed for and received benefits under SADBP for the maximum of 52 weeks. (Defs.' Facts at ¶ 7, 8; Pl.'s Facts ¶ 1.) Decedent's employment therefore terminated in June 1993, upon the termination of SADBP benefits. (Pl.'s Facts ¶ 1, 3, 4; Defs.' Facts ¶ 28, 49.) Under the terms of the 1992 SPD, then, Decedent's eligibility for group coverage expired in June 1996. (Pl.'s Facts ¶ 4; Defs.' Facts ¶ 28.) The 1992 SPD specified that an insured person is eligible "[t]o convert [his or her] coverage without proof of good health . . . within 31 days after [his or her] life insurance covered ends or is reduced" and that the life insurance continues during the time period in which an application is being processed. (Defs.' Facts ¶ 28; Pl.'s Facts ¶ 1.) Under these provisions, the notice provisions of N.J.S.A. 17B:27-24 could only extend Decedent's available time to file an application to convert to individual coverage by an additional 60 days regardless of whether notice of the opportunity to convert was ever provided, giving Decedent 91 days from the June 1996 termination of his coverage to convert his plan to individual coverage.

Plaintiff does not dispute that, during his lifetime, Decedent failed to convert his life insurance benefits into an individual policy. (Defs.' Facts ¶ 19, 22; Pl.'s Facts ¶ 1.) Since, according to the complaint, Decedent died on December 15, 2001 (Compl. ¶ 21), far more than the allowable 91 days to convert his group policy to an individual policy had passed. Furthermore, Plaintiff concedes that the 1992 SPD applies to Decedent's benefit eligibility, but contends that the 1996 SPD and its supplement govern termination provisions; regardless, no SPD extends the termination date to within 91 days of Decedent's death. (Pl.'s Facts ¶¶ 3-8.) Therefore, the question of whether N.J.S.A. 17B:27-24 was preempted by ERISA is inapposite in

this case, as N.J.S.A. 17B:27-24 is rendered inapplicable due to Decedent's failure to file a request to convert his life insurance to an individual policy within 91 days of termination of coverage.

Additionally, Plaintiff cites several cases in support of the proposition that the insurer's failure to mail Decedent notice of the ability to convert the policy pursuant to N.J.S.A. 17B:27-24, here a disputed issue of fact, caused Decedent's group policy to continue in force instead of expiring, because notification of employment termination triggers the running of the conversion period. None of the cases cited support that proposition. For example, in Gresham v. Mass. Mutual Life Ins. Co., 248 N.J. Super. 64 (App. Div. 1991), notice of conversion was given to the decedent, and instead of converting, due to scheduling difficulties that caused him to miss the deadline by days despite making the insurance company aware of his desire to convert prior to the deadline, the decedent obtained new coverage from the same company within the allowable time period for conversion on the belief that he was in good health. Id. at 66-68. However, his health failed within a month and his application for new coverage was denied on two occasions. Id. at 68. The decedent died within a year, and his wife applied for benefits under the conversion plan, despite the decedent's having never paid a premium for that year. Id. In an appeal of an equitable decision by the New Jersey Superior Court's Chancery Division, the Appellate Division determined that the insurance company breached its contract in failing to comply with its contractual duties to allow decedent to convert his policy within their deadline, so the plaintiff was eligible for benefits. The court explained:

> [w]hen an initial informal request is timely made for conversion, and an opportunity given to the insurer to present the form of conversion application and to inform the applicant of the amount

> of the first year's premium, the conversion period must be deemed
> extended until a reasonable time after the insurer has complied
> with this implicit term of the plan. Absent prompt pre-expiration
> action by the insurer after the conversion inquiry, the timely
> submission requirement may even be said to be legally waived, at
> least until a reasonable time is given after late compliance by the
> company.
>
> Id. at 71-72.

Other cases cited by Plaintiff are premised upon a lack of clarity as to whether the decedent's employment was terminated. See Estate of Hagel, 226 N.J. Super. at 187-88, 192-93; McKenna v. Prudential Ins. Co., 224 N.J. Super. 172, 177-78, 181 (App. Div. 1988); Wells, 121 N.J. Super. at 189. These situations differ greatly from the case at hand, as Decedent made no attempt to convert his policy, and it is not asserted that he was unaware of the termination of his employment. A failure to provide notice of the ability to convert to an individual policy is all that is alleged; this by itself does not indefinitely extend an individual's conversion period. See N.J.S.A. 17B:27-24; Estate of Hagel, 226 N.J. Super. at 191-92. N.J.S.A. 17B:27-24, therefore, does not apply to the case at hand; ERISA alone governs.

As Plaintiff's claim under N.J.S.A. 17B:27-24 is resolved on an issue of law, no issue of to material fact remains. Therefore, "the moving party is entitled to a judgment as a matter of law" regarding Plaintiff's state law claim under N.J.S.A. 17B:27-24. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248; Kreschollek, 223 F.3d at 204.

        2.    Claim Determination

Defendants argue that the claim determination denying benefits to Plaintiff was not arbitrary and capricious as "the undisputed facts demonstrate that the Decedent did not convert his life insurance to an individual policy prior to his death, nor did he pay premiums necessary to

maintain life insurance in force." (Defs' Br. in Supp. of Mot. for Summ. J. at 8.)  Plaintiff asserts that the claim determination must be reviewed under a "heightened form of the arbitrary and capricious standard of review[,]" because "an insurance company both fund[ed] and administer[ed] [the] benefits[.]" (Pl.'s Br. in Opp'n to M. for Summ. J. at 16.)  Plaintiff and Defendants agree that "Met Life both funded th[e] Plan at issue and determined 'eligibility for benefits[.]'" (Pl.'s Opp. to Defs.' Mot. for Summ. J. 16.)

This Court has jurisdiction over claims arising under ERISA under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  A challenge to a denial of benefits under ERISA is reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  In the latter situation, "when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 378 (3d Cir. 2000).  The Third Circuit directed "district courts to consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." Id. at 393.

To apply the heightened form of scrutiny, a "sliding scale" approach is used that examines the facts and "accord[s] different degrees of deference depending on the apparent seriousness of the conflict." Id. at 391, 392.  In reviewing a determination, "[t]he court may take into account the sophistication of the parties, the information accessible to the parties, and the

11

exact financial arrangement between the insurer and the company." Id. at 392. A court may also consider "the current status of the fiduciary." Id. Both the result and "the process by which [it] was achieved" are examined. Id. at 393. In undertaking this review, however, the Court is not required to shift the burden to the fiduciary. Id. at 392. The claimant retains the burden of proof to demonstrate the need for heightened scrutiny. Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165 (3d Cir. 1992); Marciniak v. Prudential Fin. Ins. Co. of Am., 184 Fed. App'x 266, 268 (3d Cir. 2006) (quoting Schlegel v. Life Ins. Co. of N. Am., 269 F.Supp.2d 612, 617 (E.D.Pa. 2003)). Furthermore, "'[s]uspicious events' and 'procedural anomalies' raise the likelihood of self-dealing and move the review toward the stricter extreme of the arbitrary and capricious range." Marciniak, 184 Fed. App'x at 268 (citing Pinto, 214 F.3d at 394).

A heightened arbitrary and capricious standard of review limits the deference that is normally accorded to the decisionmaker under ordinary arbitrary and capricious review. Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298 F.3d 191, 200 (3d Cir. 2002). The same analytical structure is used, however, in reviewing the claim determination. Id. at 199-200. As explained by the Third Circuit,

> a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) (internal quotations omitted). Furthermore, "[w]hether a claim decision is arbitrary and capricious requires a determination 'whether there was a reasonable basis for [the administrator's]

>decision, based upon the facts as known to the administrator at the time the decision was made.'" Levinson v. Reliance Std. Life Ins. Co., 245 F.3d 1321, 1326 (11th Cir. 2001) (quoting Jett v. Blue Cross & Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989)).

Smathers, 298 F.3d at 199-200.

In the case at hand, the insurance carrier had "sole and complete discretionary authority to determine conclusively for all parties . . . any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to the participation of eligible employees and eligibility for benefits, determination of all relevant facts, amount and type of benefits payable to any participant, spouse or beneficiary, and construction of all terms of the Plan." (Defs.' Facts 18; Pl.'s Facts 1.) Heightened scrutiny under Pinto is therefore appropriate in reviewing the claim determination in this case, as Defendant MetLife's financial interests are directly affected through its funding the plan. See Pinto, 214 F.3d at 378; Smathers, 298 F.3d at 198-99.

In determining that Decedent lacked life insurance at the time of his death and declining to pay Decedent's death benefits to Plaintiff, Defendants informed Plaintiff that "there was no coverage payable at time of death." (Eksterowicz Aff. 35.) Upon a second examination necessitated by the complaint filed by Plaintiff with the New Jersey Department of Banking and Insurance, Defendant MetLife explained that its records showed that Decedent was terminated from Defendant AT&T's active payroll on June 2, 1993; at the time, Decedent had completed "13+" years of service. (Eksterowicz Aff. 36.) Based on the SPD in effect at the time of Decedent's termination and Decedent's "years of Net Credited Service (10 through 14),"

13

Defendant MetLife determined that Decedent's "Life Insurance continued for 3 years."

(Eksterowicz Aff. 36.)  Defendant MetLife then explained that

> [Decedent] did not meet the minimum age and service criteria to retire with a Lucent Technologies Inc. Service Pension.  Because he had less than 15 years of service as of his termination date, he did not meet the eligibility requirements to retire with a Disability Pension.  The only pension entitlement is a Deferred Vested Pension, payable at age 65, assuming pre-retirement survivor annuity coverage.  Under the terms of the Lucent Technologies, Inc. Retirement Income Plan, effective 1/1/98, the Death Benefit was no longer payable to discretionary beneficiaries.  Upon the death of a LTD recipient, all beneficiaries (e.g. surviving spouse) are considered discretionary beneficiaries.  This provision of the LRIP included anyone who retired or terminated with LTD pre 1/1/98.
>
> At the end of the LTD 3 year period, you now have the option to convert coverage.  To convert your coverage without proof of insurability, you must make the conversion within 31 days after your life insurance coverage ends or is reduced.  If you apply to make a conversion, your coverage continues during that time.  After 31 days, you cannot make a conversion.  According to our records, no request was received for a conversion.
>
> Based on the information provided, [Decedent] did not have any life insurance at the time of death.
>
> (Eksterowicz Aff. 36.)

As determined in Part II(B)(1) above, state law did not indefinitely extend Decedent's eligibility to convert to an individual policy.  See N.J.S.A. 17B:27-24.  Therefore, Defendants' determination that Decedent lacked life insurance at the time of his death was based on Decedent's failure to convert to an individual policy and his subsequent failure to pay insurance premiums between mid-1996 and December 2001.

The conflicts in this case are similar to those in <u>Pinto</u>, where an insurance company both funded an insurance program and made all claim determinations. <u>See</u> <u>Pinto</u>, 214 F.3d at 381-82. Additionally, in this case, Defendant MetLife is sophisticated in its understanding of the insurance process whereas Plaintiff and Decedent were not, and Defendant MetLife had sole authority over claim determinations. <u>See</u> <u>Pinto</u>, 214 F.3d at 392. Both parties had access to the SPD documents, although Plaintiff challenges whether notice of the opportunity to convert to an individual plan was ever given. <u>See</u> <u>id.</u> For the purposes of this summary judgment motion, although Defendants produced a conversion notice, Plaintiff states that the notice was never received by Decedent and this Court accepts that the notice was not given. See Boyle, 139 F.3d at 393. Therefore, more information was accessible to Defendants than to Plaintiffs. <u>See</u> <u>Pinto</u>, 214 F.3d at 392. Of note, however, no facts supporting a claim of intentional misleading are alleged.

In applying the heightened arbitrary and capricious standard of review in <u>Pinto</u>, the Court of Appeals focused on both the result and the process by which that result was achieved. <u>Id.</u> at 393. First, unlike in <u>Pinto</u>, Defendant MetLife's claim determination, a denial of benefits, has been consistent since its first response to Plaintiff's submission for benefits. <u>See</u> <u>id.</u> Second, there is no evidence presented to the Court that demonstrates that Defendant MetLife was arbitrarily choosing one set of facts over another; for example, enforcing different SPDs does not result in markedly different results nor is it suggested that Defendant MetLife ignored available information in making its determination. <u>See</u> <u>id.</u> at 393-94. Third, no internal reviews resulted in recommendations to find Plaintiff eligible to receive benefits; Defendant MetLife did not act

15

contrary to any internal advice in denying benefits.  See id. at 394.  As such, the same degree of conflict does not exist as did in Pinto; there, the insurance company disregarded the plaintiff's treating physicians' diagnoses in favor of its own physicians' diagnoses, id. at 380-82, here, it is undisputed that Decedent failed to convert his coverage to an individual policy.  Unlike in Pinto, therefore, Defendant MetLife's claim determination falls at the lower end of heightened arbitrary and capricious review.  See id. at 394.

In implementing heightened review, this Court finds that Defendants' claim determination is "supported by the evidence in the record[,]" Smathers, 298 F.3d at 199 (quoting Orvosh, 222 F.3d at 129), and no evidence is provided that the plan required an indefinite opportunity to convert to an individual policy in the absence of a notice of conversion opportunity being provided.  See Smathers, 298 F.3d at 199.  It is not disputed that Decedent failed to convert his coverage to an individual plan, nor is it disputed that Decedent did not pay premiums during the five-plus years between the termination of his policy and his death.  Therefore, a reasonable basis existed for the administrator's decision to deny benefits based on the information available to the administrator at the time of the initial denial and, in this case, a secondary review of that denial.  See id. at 199-200 (quoting Levinson, 245 F.3d at 1326).  Furthermore, this "court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."  Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) (quotations omitted).

Despite the deference accorded to the non-moving party in a motion for summary judgment, Plaintiff has failed to show the existence of a "genuine issue as to any material fact[.]"

16

Fed. R. Civ. P. 56(c).  Accordingly, summary judgment for Defendants is warranted on the claims alleging that Defendants' claim determination was arbitrary and capricious.

### 3. Fidicuary Duty, Material Misrepresentation, & Equitable Estoppel

Defendants argue that they should be granted summary judgment "with respect to [Plaintiff's] claims based upon breach of fiduciary duty, material misrepresentation and/or equitable estoppel[.]"  (Defs.' Br. in Supp. of Mot. for Summ. J. 14.)  In response, Plaintiff only asserts that she pled a claim alleging breach of fiduciary duty.  (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. 6-12.)  In her complaint, Plaintiff fails to name a specific provision of ERISA under which she seeks relief.  However, in her opposition brief to this motion for summary judgment, Plaintiff asserts that she brings her claim under section 502(a)(3) of ERISA, "seek[ing] 'equitable' relief' . . . *vis a vis* the fiduciary claim for reinstatement then conversion of the group policy to that of an individual policy."

To succeed in a claim for violation of fiduciary duty based on misrepresentation, detrimental reliance on material misrepresentations must be shown.  Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ, & Research Found., 334 F.3d 365, 387 (3d Cir. 2003) (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)).  Plaintiff cites Varity Corp. v. Howe, 516 U.S. 489 (1996) and other cases to support the theory that she can obtain benefits under § 502(a)(3); however, the facts of this case differ from those in Varity.  First, the defendants in Varity made intentional misrepresentations to the plaintiffs, classified as "serious deception" by the Supreme Court, that resulted in injury.  Varity, 516 U.S. at 492, 492-95.  Other cases cited by Plaintiff are equally distinguishable.  See, e.g., Bixler v. Central

Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1992) (fiduciary duty found where insured requested information and insurer was aware of insured's situation: "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance"); In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 57 F.3d 1255, 1264-65 (3d Cir. 1995) (case involved extensive, consistent misrepresentations by insurer about the plan's terms).  Additionally, the plaintiffs in Varity were ineligible for relief under other provisions of ERISA, so the Supreme Court relied on § 502(a)(3) to avoid depriving those plaintiffs of all means for relief.  Varity, 516 U.S. at 515.

Furthermore, to obtain "substantive remedies" under § 502(a)(3) of ERISA for violation of the Act's reporting and disclosure requirements, a plaintiff generally must "demonstrate the presence of extraordinary circumstances[.]"  Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 74 (3d Cir. 2007).  Extraordinary circumstances are defined as those which "'generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.'"  Id. (quoting Jordan v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir.1997)).  Plaintiff alleges no acts of bad faith, fraud, nor attempts at intentional concealment; therefore, relief under § 502(a)(3) is unavailable.

In sum, Plaintiff makes no allegations of affirmative misrepresentations by Defendants.  See Burstein, 334 F.3d at 387.  No allegations of concealment by Defendants in response to affirmative questions by Decedent are made either, demonstrated by the admission that Decedent never attempted to convert his life insurance coverage to an individual policy and the lack of

allegations that any contact was made with Defendants regarding conversion. See id. Although great deference is shown to the non-moving party in a motion for summary judgment, Boyle, 139 F.3d at 393, Defendants have shown that no genuine issue of material fact exists as to the existence of a breach of fiduciary duty, and Plaintiff has failed to respond by "designat[ing] 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 322-24. Accordingly, summary judgment for Defendants is warranted on the claims alleging breach of fiduciary duty.

**IV.   CONCLUSION**

For the foregoing reasons, this Court grants Defendants' motion for summary judgment as to all parties, dismissing with prejudice Plaintiffs' Complaint in its entirety. An appropriate form of order will be filed together with this Opinion.

                                                      s/ Stanley R. Chesler
                                                      STANLEY R. CHESLER
                                                      United States District Judge

DATED: January 8, 2008